**TOTAL QUALITY, INC.**

v.

**TOWN OF SCARBOROUGH.**

Supreme Judicial Court of Maine.

Argued Jan. 3, 1991.

Decided March 5, 1991.

Richard E. Davis (orally), John E. Geary, Portland, for plaintiff.

Christopher Vaniotis (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

CLIFFORD, Justice.

On complaints brought by plaintiff Total Quality, Inc. pursuant to M.R.Civ.P. 80B, the Superior Court (Cumberland County, *Alexander, J.*) affirmed separate decisions rendered by the Planning Board and the Zoning Board of Appeals of the Town of Scarborough, from which Total Quality appeals. The Board of Appeals decision upheld the Scarborough Building Inspector's denial of a certificate of occupancy to Total Quality for its proposed ice cream stand upon a finding that the stand constituted a change in the grandfathered nonconforming use of the property. The Planning Board decision imposed conditions on the Planning Board's approval of Total Quality's site plan for the property. Finding no error in the decisions of either the Board of Appeals or the Planning Board, we affirm the judgments of the Superior Court.

Total Quality purchased a building and land on Pine Point Road in Scarborough in 1988. The previous principal use of the property had been manufacturing and wholesaling of clam products. In 1970, the Town of Scarborough enacted an amendment to its zoning ordinance that changed the district in which the property is located to a residential zone. The ordinance, however, permitted the continued operation of the clam business as a grandfathered nonconforming use.[1]

1. Section III(A) of the Scarborough Zoning Ordinance provides:

A. CONTINUATION OF NON–CONFORMANCE

In April 1989, the Scarborough Building Inspector denied Total Quality a certificate of occupancy to operate a retail ice cream business in the building, finding that the ice cream business would constitute a change in the nonconforming use and thus would require approval of the Zoning Board of Appeals to convert a nonconforming use.[2] Total Quality filed an "administrative appeal" of the Building Inspector's denial of the certificate of occupancy, arguing that the proposed ice cream business was not a different use than the previous nonconforming use, and that it was entitled to operate without Board of Appeals approval. At the same time, Total Quality sought the approval of the Zoning Board of Appeals to convert the nonconforming use of the property to a retail ice cream business through the filing of a "miscellaneous appeal." The Board of Appeals denied the administrative appeal. It is from that decision of the Board of Appeals that Total Quality appealed to the Superior Court. The Superior Court affirmed the Board. The Board granted the miscellaneous appeal to allow Total Quality to convert the property for use as a retail ice cream business. The approval, however, was subject to eight conditions. Total Quality did not challenge those conditions.

After the Board of Appeals granted Total Quality's miscellaneous appeal allowing it to operate a nonconforming use with conditions, Total Quality, as required by the Scarborough Site Plan Review Ordinance, submitted a site plan of the location of the ice cream business to the Planning Board for approval so that it could make substantial changes to the parking area on the property in conjunction with operating the retail ice cream outlet. The Planning Board approved Total Quality's site plan subject to eleven conditions. Total Quality appealed the imposition of those conditions to the Superior Court. The Superior Court affirmed the Planning Board.

In reviewing the actions of a municipal board, we review directly the record before the board to determine if the board abused its discretion, made an error of law, or made findings of fact not supported by substantial evidence in the record. *Lakes Envtl. Ass'n v. Town of Naples*, 486 A.2d 91, 94 (Me.1984).

### Board of Appeals Decision

Total Quality contends that the Superior Court erred in affirming the decision of the Board of Appeals that denied its administrative appeal because the proposed ice cream business does not constitute a change in the nonconforming use of the property. It argues that it was entitled to use the property as a retail ice cream business without Board of Appeals approval.

Total Quality had the burden at the administrative level to prove that its proposed use was not a change in the nonconforming use. *See C & P Building Ltd. Partnership v. District of Columbia Bd. of Zoning Adjustment*, 442 A.2d 129, 133 (D.C.App.1982). Accordingly, Total Quality must demonstrate on appeal not only that the Board's findings are unsupported by record evidence, but also that the record compels contrary findings. *Grant's Farm Assocs. v. Town of Kittery*, 554 A.2d 799, 801 (Me.1989).

The test for determining whether a proposed property use fits within a grandfathered nonconforming use is: (1) whether the use reflects the "nature and purpose" of the use prevailing when the zoning legislation took effect; (2) whether there is created a use different in quality or character, as well as in degree, from the original use, or (3) whether the current use is different in kind in its effect on the neighborhood.

---

Any lawful use of buildings, structures, land, or parts thereof existing at the time of adoption or amendment of this Ordinance, and made non-conforming by the provisions of this Ordinance or any amendments thereto, may be continued, subject to the provisions of this Section.

**2.** Section III(F) of the Scarborough Zoning Ordinance provides in relevant part:

[A] non-conforming use of land, buildings or structures may be enlarged, extended, expanded, resumed, or converted to another nonconforming use ... upon approval by the Board of Appeals....

*Keith v. Saco River Corridor Comm'n,* 464 A.2d 150, 155 (Me.1983). The Board of Appeals found, based on evidence in the record, that the owner of the property prior to Total Quality manufactured clam cakes and clam "nuggets," which it sold wholesale to supermarkets and major companies under the name "Coast of Maine Products." [3] Although Coast of Maine Products sold some clam cakes to the public during the summer, a retail store was not in general operation on the property and no sales tax was collected on over-the-counter sales. In contrast, the ice cream business proposed by Total Quality would manufacture ice cream on the premises solely for retail sale to the public, a use that falls within the definition of a "drive-in restaurant" under the zoning ordinance.[4]

On the evidence before it, the Board of Appeals was not compelled to find that the retail ice cream business proposed by Total Quality is equivalent to the clam processing and manufacturing business that formerly operated on the property in its nature and purpose, its quality, character and degree, and its effect on the neighborhood. *See Keith,* 464 A.2d at 155. Accordingly, the record did not compel a finding that the ice cream business would not be a change in the nonconforming use. *See Shackford & Gooch, Inc. v. Town of Kennebunk,* 486 A.2d 102, 105 (Me.1984) (essential policy of zoning is to eliminate nonconforming uses as soon as possible).

*Planning Board Decision*

 In its appeal from the Superior Court's affirmance of the Planning Board decision to approve its site plan subject to eleven conditions, Total Quality challenges the imposition of three of those conditions requiring it to install (1) a guardrail along the southern property line; (2) a fence twenty-five feet from the rear property line; and (3) a fence and evergreens along the northern property line.

Contrary to Total Quality's contentions, the Planning Board did not abuse its discretion or exceed its authority in imposing these requirements. *See Rockland Plaza Realty Corp. v. Laverdiere's Enters., Inc.,* 531 A.2d 1272, 1273–74 (Me.1987). The Site Plan Review Ordinance gives the Planning Board authority to impose these conditions.[5] Moreover, the conditions are reasonable means of achieving the goals stated in the Ordinance of promoting traffic safety and minimizing the impact of the property use on abutting properties.

The entry is:

Judgments affirmed.

All concurring.

---

3. Although other persons owned the property and operated the clam manufacturing business in 1970, when the use first became nonconforming, Total Quality presented no evidence that the nature or scope of the business in 1970 differed from that operated by Coast of Maine Products.

4. The Scarborough Zoning Ordinance defines a "drive-in restaurant" as a business establishment the principal business of which is the preparation of food and beverages for consumption by paying customers off the premises.

5. The relevant provisions of the Site Plan Review Ordinance are as follows:

With respect to vehicular and pedestrian circulation, including walkways, interior drives and parking, special attention shall be given to location, number of access points and increased traffic to the public streets, width of interior drives and access points, general interior circulation, separation of pedestrian and vehicular traffic, and arrangement of parking areas that are safe and convenient, and, insofar as practicable, do not detract from the design of proposed buildings and structures and the neighboring properties.
Section C(3).

Guardrails and/or wheel stops permanently anchored to the ground shall be provided in appropriate locations.
Section G(2)(d).

Buffers are fences, landscaping, berms and mounds used to minimize any adverse impacts or nuisance on the site or from adjacent areas.
Section G(16).

Buffers shall be sufficient to shield structures and uses from the view of abutting properties, and otherwise to minimize the impact on abutters of any nuisances....
Section G(16)(f).